**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BARTLEY M. MULLEN, JR. and JILL MCKENZIE, individually and on behalf of all others similarly situated, | Case No. 2:19-cv-01278-MPK |
| Plaintiffs, | |
| v. | |
| AMERICAN EAGLE OUTFITTERS, INC., | |
| Defendant. | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Bartley M. Mullen, Jr. and Jill McKenzie (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action against American Eagle Outfitters, Inc. ("Defendant") alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and its implementing regulations (the "ADA"), for declaratory and injunctive relief, attorneys' fees, and expenses.

**INTRODUCTION**

1.      This is a case about putting profit ahead of the rights of people with disabilities.

2.      Defendant positions a host of obstructions, including but not limited to, merchandise, merchandise displays, stocking equipment and/or other items positioned so that they block or narrow the aisle pathways of its stores.

3.      Upon information and belief, this practice is intentional, and driven by a calculated judgment that impeding interior paths of travel increases sales revenue and profits. *See, e.g.*, *Stuff*

*Piled in the Aisle? It's There to Get You to Spend More*, The New York Times, (April 7, 2011);[1]

*see also, Why a Messy, Cluttered Store is Good for Business*, Time Magazine, (April 8, 2011).[2]

4.      Although this practice may increase profits, it does so at the expense of basic civil rights guaranteed to people with disabilities by the ADA because it results in unlawful access barriers.

5.       Plaintiffs, at all times relevant hereto, have suffered from legal mobility disabilities as defined by the ADA, 42 U.S.C. § 12102(2). Plaintiffs are therefore members of the protected class under the ADA and the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 *et. seq.*

6.      Plaintiffs have regularly visited Defendant's stores and have been repeatedly denied full and equal access to the stores as a result of accessibility barriers existing in interior paths of travel. These access barriers include but are not limited to: merchandise, merchandise displays, stocking equipment and/or other items, positioned so that they impermissibly block or narrow the aisle pathways. These conditions violate the ADA and deny Plaintiffs' equal access to the goods and services offered at Defendant's stores.

7.      The access barriers described herein are not temporary and isolated. They are systemic, recurring, and reflective of Defendant's marketing and store policies and practices. Plaintiffs have encountered the same types of barriers on multiple occasions and have been repeatedly deterred from accessing Defendant's goods and services as a result.

---

[1] Available at https://www.nytimes.com/2011/04/08/business/08clutter.html as of December 20, 2019.

[2] Available at http://business.time.com/2011/04/08/why-a-messy-cluttered-store-is-good-for-business/ as of December 20, 2019.

8.      This action is not about a single specific barrier that Plaintiffs have encountered – rather, this action seeks to address the persistently inaccessible conditions of Defendant's stores that are occurring because of Defendant's practices and policies of cluttering its stores with merchandise and other items within interior paths of travel. Plaintiffs are putting Defendant on notice that its stores' conditions are inaccessible because of the many types of access barriers that are present, persisting, and reoccurring within its stores.

9.      Counsel for Plaintiffs have overseen an investigation into Defendant's stores which has confirmed the widespread existence of interior access barriers that are the same as, or similar to, the barriers directly experienced by Plaintiffs. This investigation further confirms Plaintiffs' experiences of encountering various access barriers at multiple locations within Defendants' stores of a specific type and sort – typically merchandise and merchandise displays projecting into interior paths of travel.

10.     Unless Defendant is required to remove the access barriers described herein, and required to change its policies and practices to ensure its stores are and remain readily accessible, Plaintiffs and the proposed Class will continue to be denied full and equal access to the stores and will be deterred from fully using Defendant's stores.

11.     In accordance with 42 U.S.C. § 12188(a)(2), Plaintiffs seek a permanent injunction requiring that:

a) Defendant remediate all interior path of travel access barriers at Defendant's Pennsylvania stores, consistent with the ADA;

b) Defendant change its policies and practices to ensure that its Pennsylvania facilities are fully accessible to, and independently usable by, individuals who use wheelchairs or scooters; and

c) Plaintiff's representatives shall monitor Defendant's Pennsylvania stores to ensure that the injunctive relief ordered pursuant to this Complaint has been implemented and will remain in place.

12.     Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate…. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

### THE ADA'S CLEAR AND COMPREHENSIVE MANDATE

13.     The ADA was enacted over a quarter century ago and was intended to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

14.     The ADA is the central civil rights law protecting people with disabilities, a group of Americans who are too often overlooked and undervalued. Like other civil rights laws, the purpose of the ADA is clear: the eradication of discrimination. As one legal scholar explained: "A single step in front of a store may not immediately call to mind images of Lester Maddox standing in the door of his restaurant to keep blacks out. But in a crucial respect they are the same, for a step can exclude a person who uses a wheelchair just as surely as a no-blacks-allowed rule can exclude a class of people." Samuel Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 23 (2006).

15.     The Supplementary Information to 28 C.F.R. § 36 explains, among other things: "Some of the most frequently cited qualitative benefits of increased access are the increase in one's

4

personal sense of dignity that arises from increased access and the decrease in possibly humiliating incidents due to accessibility barriers. Struggling [to use a non-accessible facility] negatively affect[s] a person's sense of independence and can lead to humiliating accidents, derisive comments, or embarrassment. These humiliations, together with feelings of being stigmatized as different or inferior from being relegated to use other, less comfortable or pleasant elements of a facility . . . all have a negative impact on persons with disabilities."

16.     Title III of the ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). It prohibits places of public accommodation, either directly or through contractual, licensing, or other arrangements, from outright denying individuals with disabilities the opportunity to participate in the goods or services offered by a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), or denying individuals with disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii).

17.     Discrimination on the basis of disability can occur, generally, through a denial of the opportunity to participate in or benefit from goods, services, facilities, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i)); or from affording goods, services, facilities, or accommodations that are not equal to those afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii)); or from providing goods, services, facilities, or accommodations that are separate from those provided to other individuals (42 U.S.C. § 12182(b)(1)(A)(iii)).

## THE ADA AND THE RIGHT OF NON-DISCRIMINATORY
## ACCESS TO GOODS

18.     The ADA requires Defendant to provide individuals who use wheelchairs or scooters full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages, and accommodations, and further requires that all of Defendant's facilities that are open to the public must be "readily accessible". 42 U.S.C. §§ 12182(a) and 12183.

19.     The ADA specifically prioritizes "measures to provide access to those areas where goods and services are made available to the public. These measures include, for example, adjusting the layout of display racks, rearranging tables …" 28 C.F.R. § 36.304

20.     The Department of Justice, pursuant to 42 U.S.C. § 12186(b), has promulgated the ADA Accessibility Guidelines ("ADAAG") in implementing Title III of the ADA. There are two active ADAAGs that set forth the technical structural requirements that a public accommodation must meet in order to be "readily accessible": the 1991 ADAAG Standards, 28 C.F.R. § pt. 36, App. D ("1991 Standards"), and the 2010 ADAAG Standards, 36 C.F.R. § pt. 1191, App. D ("2010 Standards").

21.     In order for Defendant's facilities to be "readily accessible" under Title III of the ADA, merchandise on fixed aisle shelving in a retail store must be located on an accessible route. The applicable "accessible route" standards are set forth in the 2010 Standards at Section 403.5.1. *See also* ADA Guide for Small Businesses, June 1999, *available at* https://www.ada.gov/smbustxt.htm (noting that "when sales items are displayed or stored on shelves for selection by customers, the store must provide an accessible route to fixed shelves and displays...").

22.     ADA Figure 403.5.1 explains that an accessible route must be a minimum of 36 inches, but can be reduced to 32 inches for a length of no more than 24 inches, such as at doors,

so long as the 32 inch segments are at least 48 inches apart. *See* ADA Figure 403.5.1 *available at* https://www.access-board.gov/guidelines-and-standards/buildings-andsites/about-the-ada-standards/ada-standards/chapter-4-accessible-routes

23.     The ADA requires reasonable modifications in policies, practices, or procedures when necessary to afford goods, services, facilities, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

24.     The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

25.     The access barriers described herein demonstrate that Defendant's facilities are not readily accessible to and usable by individuals who use wheelchairs or scooters.

26.     Defendant's repeated and systemic practices herein described constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

## <u>JURISDICTION AND VENUE</u>

27.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

28.     Plaintiffs' claims asserted herein arose in this judicial district, and Defendant does substantial business in this judicial district.

29.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides in this judicial district and this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

30.     Plaintiff Bartley M. Mullen, Jr. is, and at all times relevant for purposes of this action was, a resident of Beaver, Pennsylvania.

31.     Plaintiff Mullen is a person with double, above-the-knee leg amputations, who uses a wheelchair for mobility. As a result of this mobility disability, he is substantially limited in one or more major life activities, particularly with ambulation. Plaintiff Mullen is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq.*

32.     Plaintiff Jill McKenzie is, and at all times relevant hereto was, a resident of Altoona, Pennsylvania.

33.     Plaintiff McKenzie is an individual with a mobility disability caused from multiple sclerosis, and she uses a wheelchair for mobility. As a result of this mobility disability, she is substantially limited in one or more major life activities, particularly with ambulation. Plaintiff McKenzie is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq.*

34.     Plaintiffs are testers in this litigation and regular customers of Defendant's stores who desire equal access to Defendant's goods and services. *See, e.g., Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 457 (4th Cir. 2017); *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.,* 867 F.3d 1093, 1102 (9th Cir. 2017); *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211-12 (10th Cir. 2014); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372-74 (1982).

35.    Defendant American Eagle Outfitters, Inc. is a Delaware corporation, and is headquartered at 77 Hot Metal Street, Pittsburgh, PA 15203.

36.    Defendant's stores are places of public accommodation pursuant to 42 U.S.C. §12181(7).

## FACTUAL ALLEGATIONS AND PLAINTIFFS' EXPERIENCES

### I.    Plaintiffs Have Been Denied Full and Equal Access to Defendant's Facilities.

37.    In September 2019, Plaintiff Mullen patronized Defendant's store located at 518 Beaver Valley Mall, Monaca, Pennsylvania 15061 (the "Beaver Valley Store").

38.    Plaintiff Mullen lives near the Beaver Valley Store, and he regularly travels in and around the area where it is located. Specifically, Plaintiff Mullen regularly visits the Beaver Valley shopping mall, which is where the Beaver Valley Store is located, for shopping and dining. During these trips, he regularly patronizes retail stores like and including Defendant's store, and to socialize with friends.

39.    During Plaintiff Mullen's visit to the Beaver Valley Store, he repeatedly encountered interior access barriers within the store, including but not limited to merchandise and merchandise displays, which narrowed interior paths of access to a width below statutorily prescribed requirements and precluded Plaintiff Mullen's equal access to Defendant's goods and services in violation of the ADA's equal access mandate, generally, and the requirements of the 2010 Standards Section 403.5.1. These barriers inhibit his ability to navigate Defendant's stores and preclude his access to Defendant's goods. Plaintiff Mullen would shop at Defendant's Beaver Valley Store more often, and with less difficulty, if Defendant's stores were readily accessible.

40.    Plaintiffs' Investigator also separately examined the Beaver Valley Store and encountered the same types of access barriers that Plaintiff Mullen encountered, as depicted in the

9

following images which demonstrate access barriers narrowing the pathway to less than thirty-two

inches in width:



*Figure 1 – American Eagle, 518 Beaver Valley Mall, Monaca, Pennsylvania 15061*



*Figure 2 – American Eagle, 518 Beaver Valley Mall, Monaca, Pennsylvania 15061*

41.     Plaintiff Mullen has regularly contended with these types of access barriers ever since he first became mobility disabled, and he is exasperated that retailors continue to disregard basic accessibility requirements, and that they continue to treat individuals with disabilities as second-class citizens nearly thirty years after passage of the ADA.

42.     The practice of retailers overloading their stores' capacities for merchandise, displays, and equipment by placing such items in as many locations as possible, including excessively and impermissibly within interior paths of access, appears to be an industry-wide

11

problem. Indeed, as an advocate for the disabled community, Plaintiff Mullen has filed lawsuits against other retailers for the same types of policies, practices and interior store conditions that are at issue in this matter. *See Mullen v. Spencer Gifts LLC,* No. 2:19-cv-00555 (W.D. Pa.) (*settled*); *Mullen v. Hot Topic, Inc.*, No. 2:19-cv-00554 (W.D. Pa.) (*settled*); *Mullen v. Dick's Sporting Goods, Inc.*, No. 2:19-cv-00374 (W.D. Pa.) (*pending*). Plaintiff Mullen's advocacy has resulted in improved, greater, and sustained accessibility conditions for individuals with mobility disabilities at hundreds of retail stores across the nation, and at the same time put large national retailers on notice that pursuing profits ahead of the rights of individuals with disabilities will not be apathetically endured by the disabled community.

43. Plaintiff McKenzie has similarly endured encountering repeated and persistent access barriers within retail stores, including at Defendant's store located at 5580 Goods Lane, Altoona, PA 16002 (the "Altoona Store"). Plaintiff McKenzie resides approximately five miles from Defendant's Altoona Store, and has regularly shopped there in the past, including within the past year.

44. Plaintiff McKenzie also travels to Pittsburgh from time-to-time with her granddaughter to go shopping at different retail outlets and malls. During those trips, Plaintiff McKenzie will often visit other of Defendant's stores located in Pittsburgh.

45. Before Plaintiff McKenzie's medical condition developed, she would regularly visit the Altoona Store about once a month. Although Plaintiff McKenzie still frequents Defendant's stores, due her present condition and mobility disability, she has been unable to navigate Defendant's stores because of barriers within the stores' interior paths of access, deterring her from shopping at Defendant's stores.

46.     For example, on one occasion when Plaintiff McKenzie was attempting to navigate Defendant's Altoona Store, while trying to pass through a narrowed pathway that was impeded with a merchandise display, Plaintiff McKenzie accidentally pulled down the display onto herself while trying to pass it. As the merchandise fell onto her, it spilled merchandise on and around her, and although Plaintiff McKenzie was not seriously harmed, she was left humiliated and frustrated by the incident and that she could not navigate Defendant's store because of the barriers.

47.     Plaintiff McKenzie has repeatedly encountered interior access barriers during her visits to the Altoona Store, including but not limited to merchandise and merchandise displays, which narrowed interior paths of access to a width below statutorily prescribed requirements and precluded Plaintiff McKenzie's equal access to Defendant's goods and services in violation of the ADA's equal access mandate, generally, and the requirements of the 2010 Standards Section 403.5.1. These barriers inhibit her ability to navigate Defendant's stores and preclude her access to Defendant's goods. And, as explained above, the barriers also pose a potential hazard, as on a least one occasion, Plaintiff McKenzie has accidentally pulled down a merchandise display onto herself while attempting to navigate around the display. Plaintiff McKenzie would shop at Defendant's Altoona Store and other stores more often, and with less difficulty, if Defendant's stores were readily accessible.

48.     Plaintiffs' Investigator also separately examined the Altoona Store and encountered the same types of access barriers that Plaintiff McKenzie has repeatedly encountered, as depicted in the following images which demonstrate access barriers narrowing the pathway to less than thirty-two inches in width:

13



*Figure 3 – American Eagle, 5580 Goods Lane, Altoona, Pennsylvania 16602*



*Figure 4 – American Eagle, 5580 Goods Lane, Altoona, Pennsylvania 16602*

49.     In addition, Plaintiffs' Investigator examined other of Defendant's American Eagle retail locations and determined the same problems existed that were present in the locations visited by Plaintiffs, as depicted in the following images which demonstrate access barriers narrowing the pathway to less than thirty-two inches in width:

a) 5256 US-30, #115, Greensburg, Pennsylvania 15601



*Figure 5 – American Eagle, 5256 US-30*

16

b)  200 Mall Circle Dr., #222, Monroeville, Pennsylvania 15146



*Figure 6 – American Eagle, 200 Mall Circle Dr.*

c)  1000 Ross Park Mall Dr., Pittsburgh, Pennsylvania 15237



*Figure 7 – American Eagle, 1000 Ross Park Mall Dr.*

18

d)  2390 Robinson Centre Dr., Pittsburgh, Pennsylvania 15205



*Figure 8 – American Eagle, 2380 Robinson Centre Dr.*

e) 20111 RT 19, #108, Cranberry Township, Pennsylvania 16066



*Figure 9 – American Eagle, 20111 RT 19*

f)   150 South Hills Village, Bethel Park, Pennsylvania 15241



*Figure 10 – American Eagle, 150 South Hills Village*

21

g) 500 Galleria Dr, #124, Johnstown, Pennsylvania 15904



*Figure 11 – American Eagle, 500 Galleria Dr*

h)  428 Pittsburgh Mills Cir, Tarentum, Pennsylvania 15084



*Figure 12 – American Eagle, 428 Pittsburgh Mills Cir*

i)   1338 Mall Run Rd, Uniontown, Pennsylvania 15401



*Figure 13 – American Eagle, 1338 Mall Run Rd*

24

j)   2334 Oakland Ave, Suite 38, Indiana, Pennsylvania 15701



*Figure 14 – American Eagle, 2334 Oakland Ave*

25

k)  2900 E College Ave, #706, State College, Pennsylvania 16801



*Figure 15 – American Eagle, 2900 E College Ave*

l)   5800 Peach St, Erie, Pennsylvania 16565



*Figure 16 – American Eagle, 5800 Peach St*

50.     The barriers depicted above illustrate some, but not all, of the types of interior access barriers at Defendant's stores. Collectively, these barriers impeded Plaintiffs' access to goods and services at Defendant's stores.

51.     As a result of Defendant's non-compliance with the ADA, Plaintiffs' rights to full and equal, non-discriminatory, and safe access to Defendant's goods and facilities have been denied.

52.     Plaintiffs will be deterred from returning to and fully and safely accessing Defendant's facilities so long as Defendant's facilities remain non-compliant, and so long as Defendant continues to employ the same policies and practices that have led, and in the future will lead, to inaccessibility at Defendant's facilities.

53.     Nonetheless, Plaintiffs would like to continue to visit Defendant's stores that are close to their homes, both to attempt to access goods and services in those stores and to survey the stores for compliance with the ADA.

54.     Without injunctive relief, Plaintiffs will continue to be unable to fully and safely access Defendant's facilities in violation of his rights under the ADA.

55.     As individuals with mobility disabilities who are dependent upon a wheelchair, Plaintiffs are directly interested in whether public accommodations, like Defendant's facilities, have access barriers that impede full accessibility to those accommodations by individuals with mobility-related disabilities.

**II.     Defendant Denies Individuals With Disabilities Full and Equal Access to its Facilities.**

56.     Defendant is engaged in the ownership, management, operation, and development of retail stores throughout the United States, including, upon information and belief, approximately 800 stores across the United States and 55 stores across Pennsylvania.

57.     As the owner, operator, and/or manager of its properties, Defendant employs centralized policies, practices, and procedures with regard to the design, construction, alteration, maintenance, and operation of its facilities.

58.     However, as set forth herein, these policies, practices, and procedures are inadequate in that Defendant's facilities are operated in violation of the accessibility requirements of Title III of the ADA.

59.     As evidenced by the widespread inaccessibility of Defendant's stores visited by Plaintiffs and Plaintiffs' Investigator, absent a change in Defendant's corporate policies and practices, access barriers are likely to reoccur in Defendant's facilities even after they have been remediated in the first instance.

60.     Accordingly, Plaintiffs seek an injunction to remove the barriers currently present at Defendant's facilities and an injunction to modify the policies and practices that have created or allowed, and will create or allow, access barriers in Defendant's stores.

## CLASS ALLEGATIONS

61.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a) and (b)(2), on behalf of themselves and the following class:

> All persons with qualified mobility disabilities who have attempted, or will attempt, to access the interior of any store owned or operated by Defendant within Pennsylvania and have, or will have, experienced an access barrier in interior paths of travel.

62.     Numerosity: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court, and will facilitate judicial economy.

29

63.    Typicality: Plaintiffs' claims are typical of the claims of the members of the class. The claims of Plaintiffs and members of the class are based on the same legal theories and arise from the same unlawful conduct.

64.    Common Questions of Fact and Law: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's facilities and/or services due to Defendant's failure to make its facilities fully accessible and independently usable as above described. The questions of law and fact that are common to the class include:

a.    Whether Defendant operates places of public accommodation and are subject to Title III of the ADA and its implementing regulations;

b.    Whether storing merchandise and/or merchandise displays in interior aisles of the stores makes the stores inaccessible to Plaintiffs and putative class members; and,

c.    Whether Defendant's storage, stocking and setup policies and practices discriminate against Plaintiffs and putative class members in violation of Title III of the ADA and its implementing regulations.

65.    Adequacy of Representation: Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the members of the class. Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and have no interests antagonistic to the members of the class. Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

66.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## CAUSE OF ACTION: VIOLATION OF THE ADA

67.     Defendant has failed, and continues to fail, to provide individuals who use wheelchairs or scooters with full and equal enjoyment of its facilities.

68.     Defendant has discriminated against Plaintiffs and the class in that Defendant has failed to make Defendant's facilities fully accessible to, and independently usable by, individuals who use wheelchairs or scooters in violation of 42 U.S.C. § 12182(a) as described above, and for violations of Section 403.5.1 of the 2010 Standards.

69.     Defendant's conduct is ongoing and continuous, and Plaintiffs have been harmed by Defendant's conduct.

70.     Unless Defendant is restrained from continuing its ongoing and continuous course of conduct, Defendant will continue to violate the ADA and will continue to inflict injury upon Plaintiffs and the class.

71.     Given that Defendant has not complied with the ADA's requirements to make Defendant's facilities fully accessible to, and independently usable by, individuals who use wheelchairs or scooters, Plaintiffs invoke their statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and the members of the class, pray for:

a.      A declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA, and the relevant implementing regulations of the ADA, in that Defendant's facilities are not fully accessible to and independently usable by individuals who use wheelchairs or scooters;

b.      A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that: (i) directs Defendant to take all steps necessary to remove the access barriers described above and to bring its Pennsylvania facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs or scooters; (ii) directs Defendant to change its policies and practices to ensure its Pennsylvania facilities are fully accessible to, and independently usable by, individuals who use wheelchairs or scooters; and (iii) directs that Plaintiffs shall monitor Defendant's Pennsylvania facilities to ensure that the injunctive relief ordered above remains in place;

c.      An Order certifying the class proposed by Plaintiffs, naming Plaintiffs as class representatives, and appointing their counsel as class counsel;

d.      Payment of costs of suit;

e.      Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, and/or nominal damages; and,

f.      The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated: December 20, 2019                           Respectfully submitted,

                                                   */s/ R. Bruce Carlson*
                                                   R. Bruce Carlson
                                                   Kelly K. Iverson
                                                   Bryan A. Fox
                                                   **CARLSON LYNCH, LLP**
                                                   1133 Penn Avenue, 5th Floor
                                                   Pittsburgh PA, 15222
                                                   (412) 322-9243 (Tel.)
                                                   bcarlson@carlsonlynch.com
                                                   kiverson@carlsonlynch.com
                                                   bfox@carlsonlynch.com

                                                   *Attorneys for Plaintiff*